MASTERSON IRR. CO. v. OWEN et al. (No. 7792.)

(Court of Civil Appeals of Texas. Galveston. Dec. 10, 1919.)

DEEDS ⊂⊃118—EVIDENCE SHOWING MISTAKE IN NUMBERING OF LOT CONVEYED.

In suit for title and possession of lot 4 of a subdivision, the southeast quarter, evidence *held* to sustain the finding of the trial court that a deed from the first to the second of plaintiff's remote grantors conveyed the southwest quarter of the subdivision, or lot 3, though it stated that it conveyed lot 4, a mistake recognized by another party in plaintiff's chain of title by the recitals he made in a subsequent power of attorney.

Appeal from District Court, Brazoria County; Sam'l J. Styles, Judge.

Suit by the Masterson Irrigation Company against John A. Owen and others. From judgment for defendants, plaintiff appeals. Affirmed.

J. E. Winfree, of Houston, for appellant.
Munson & Williams, of Angleton, for appellees.

LANE, J. This suit was brought by appellant, Masterson Irrigation Company, against John A. Owen, Jacob Ford, Frank Miller, H. V. Young, and George Miller for title and possession of lot 4 of the J. C. Tolman subdivision of section 34 of the H. T. & B. Railroad survey in Brazoria county, Tex., containing 160 acres of land. The suit, however, was dismissed as to John A. Owen and Jacob Ford; it having been shown that Owen and Ford had conveyed any interest they had to the land in controversy to Frank Miller, H. V. Young, and George Miller; therefore neither Owen nor Ford will be further mentioned as parties to the suit.

Plaintiff's petition is in the usual form of petitions in suits of trespass to try title. It is alleged therein that plaintiff is the owner in fee simple of lot 4 of the J. C. Tolman subdivision of section 34 of the H. T. & B. Railroad survey; that it acquired the title through a regular chain emanating from John B. Summerfelt, the common source under whom both plaintiff and defendants claim title; that on the 23d day of February, 1910, the title to the land in controversy was vested in J. B. Summerfelt, and that on said date J. B. Summerfelt sold and conveyed the same to F. E. Pye Realty Company; that on the 24th day of February, 1910, F. E. Pye Realty Company conveyed the same to Herman Wendhausen; and that on the 6th day of September, 1916, Wendhausen and Meek and Highsmith conveyed the same land to plaintiff.

The defendants Frank Miller, H. V. Young, and George Miller answered by general demurrer, general denial, a plea of not guilty, and specially denied that Summerfelt conveyed the land in controversy, to wit, lot 4 of the Tolman subdivision of section 34 of the H. T. & B. Railroad survey, to F. E. Pye Realty Company, or that F. E. Pye Realty Company conveyed the same to Wendhausen, and alleged that the land conveyed by Summerfelt to Pye Realty Company and by Pye

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Realty Company to Wendhausen was not said lot No. 4, which is the southeast quarter of said section 34, but that the land so conveyed was the southwest quarter of said section 34, and lot No. 3 of said Tolman subdivision.

They further alleged that Summerfelt conveyed the land in controversy to John A. Owen, and that they hold title through and under Owen. They also alleged that the claim of plaintiff casts a cloud upon their title, and prayed for removal of such cloud, etc.

The undisputed evidence shows that section 34 of the H. T. & B. Railroad survey of land in Brazoria county, Tex., contains 640 acres and that its boundaries form a square; that it was subdivided by one J. C. Tolman into four equal parts by running one line through its center from north to south and another from east to west; that Tolman made a plat or map of the subdivisions so made and thereon designated and marked the several quarters as follows: The northwest quarter as lot No. 1, the northeast quarter as lot No. 2, the southwest quarter as lot No. 3, and the southeast quarter as lot No. 4. All of these lots were conveyed to and became the property of one Nell McQuaid. On the 30th day of April, 1918, Nell McQuaid conveyed to Morris Stern all of the quarter sections just designated on the Tolman map; each lot was described separately and call was made for the Tolman map for greater description. On the 20th day of March, 1908, Morris Stern conveyed to John B. Summerfelt the whole of said section 34 which he had purchased from Nell McQuaid, and in his deed described the same by referring to lots 1, 2, 3, and 4 as shown by the Tolman map, and also described them by metes and bounds, placing the lots on the ground just as shown by the Tolman map.

On the 23d day of February, 1910, John B. Summerfelt conveyed to F. E. Pye Realty Company a tract of land described as follows:

"Lot No. 4 of the J. C. Tolman subdivision of section No. 34, H. T. & B. R. R. survey, abstract 554, Brazoria county, Texas, and being the *southwest* quarter of said section No. 34 and containing 160 acres." (Italics ours.)

And on the same day he also conveyed to Pye Realty Company lot No. 1 of said Tolman subdivision, thus conveying to Pye Realty Company the entire west half of said section 34, and on the 24th day of February, 1910, F. E. Pye Realty Company conveyed to Herman Wendhausen the lot which was described in the deed of Summerfelt as lot No. 4 of Tolman subdivision, and as the southwest quarter of said section 34, under the following description:

"Lot No. 4 of J. C. Tolman subdivision of section No. 34, H. T. & B. R. R. survey, abstract 554, in Brazoria county, Texas, containing 160 acres of land, being the *southwest* quarter of said section." (Italics ours.)

On the 13th day of February, 1911, John B. Summerfelt conveyed to John A. Owen lots Nos. 2 and 4 of the Tolman subdivision of said section 34, and in his deed described the same as lots 2 and 4 as shown by the Tolman map, and also described the same by metes and bounds, calling for the east boundary lines of lots 1 and 3 as the west boundaries of said lots 2 and 4; thus conveying to Owen the entire east half of section No. 34. It is further shown that defendants hold the land in controversy by mesne conveyances from and under John A. Owen.

At the time of the sale of the whole of said section 34 by Nell McQuaid to Morris Stern, McQuaid owed Mrs. Eliza Kempner certain notes which were given in part payment for the same land which she had purchased from Mrs. Kempner. Among these notes were Nos. 3, 4, and 5.

On the 5th day of March, 1910, Mrs. Eliza Kempner executed and delivered to Nell McQuaid a release reading as follows:

"Whereas, by deed dated February 10, 1908, recorded in the county clerk's office of Brazoria county, Texas, in book ——, page ——, Eliza Kempner conveyed to Nell McQuaid lot No. 4, out of section 34, H. T. & B. R. R. Co. survey in Brazoria county, Texas, according to subdivision made by J. C. Tolman, which property is fully described in said deed to which reference is here made for all purposes, retaining therein a vendor's lien securing the payment of certain notes; and

"Whereas, said notes and all interest thereon in full satisfaction of said incumbrance have been paid:

"Now, therefore, know all men by these presents, that I, Eliza Kempner, being the legal owner and holder of the above referred to notes at the time of their payment, do hereby release the above-described property, to wit, lot No. 4, from vendor's lien aforesaid, and declare the same extinguished.

"Witness my hand at Galveston, Texas, this 5th day of March, A. D. 1910."

On the 9th day of May, 1911, more than a year after the above-mentioned release was executed and recorded, Eliza Kempner in writing transferred the vendor's notes Nos. 3, 4, and 5, above mentioned, to H. Masterson, and in said written transfer it is recited that notes Nos. 1 and 2 of said series had been paid.

Nell McQuaid had given Eliza Kempner a deed of trust on lot 3 of said Tolman subdivision before she sold to Morris Stern, describing it by metes and bounds, which placed lot 3 in the southwest quarter of said section 34, to secure the payment of the vendor's lien notes retained against said land. The vendor's lien notes retained against lot 3, the southwest quarter of said section 34, were transferred by Eliza Kempner to H. Masterson on May 9, 1911. This deed of trust was

foreclosed by sale by substitute trustee on June 6, 1911, and bought by A. E. Masterson at said sale. On October 20, 1911, Herman Wendhausen executed to Meek & Highsmith a power of attorney coupled with an interest to recover lot No. 3 of said J. C. Tolman subdivision, containing 160 acres, and being the southwest quarter of said section 34, and recites in said power of attorney, among other things, the following:

"This southwest quarter of said section being deeded to me on the 24th day of February, 1910, by F. E. Pye Realty Company of Houston, Texas, said deed of record in the county clerk's office of Brazoria county, in volume 95, on pages 376, 377, in which deed F. E. Pye sold me said property for $3,200 cash, and which said deed described the property as follows: 'Lot No. four (4) of the J. C. Tolman subdivision, section 34, H. T. & B. R. R. survey, abstract No. 554, Brazoria county, Texas, containing one hundred and sixty (160) acres of land, and being the southwest quarter of said section.' The description of this land made by F. E. Pye to me and described in said deed should have been lot No. three (3) instead of lot No. four (4); said lot No. three (3) being the lot which he sold me."

Herman Wendhausen instituted suit in the United States court for the Southern district of Texas, through his attorneys, Meek & Highsmith, against A. E. Masterson for recovery of said lot No. 3, being the southwest quarter of said section.

A. E. Masterson conveyed said lot 3 to Bassett Blakely, and Blakely conveyed the same to Masterson Irrigation Company, August 25, 1916. After acquiring title to lot 3, the southwest quarter of said section, involved in the suit of Wendhausen v. A. E. Masterson, appellant, Masterson Irrigation Company, on September 6, 1916, obtained a deed from 'J. V. Meek, C. C. Highsmith, and Herman Wendhausen, under the following description:

"Lot No. 4 of the J. C. Tolman subdivision of section No. 34, H. T. & B. R. R. survey, abstract No. 554, containing 160 acres of land. We also hereby sell and convey our entire interest in said section No. 34, H. T. & B. R. R. survey, abstract No. 544, unto the said Masterson Irrigation Company, its successors and assigns."

The further description "being the southwest quarter of section 34," contained in the deed to Wendhausen, was omitted from this deed, and the clause conveying all interest in said section was inserted.

Meek & Highsmith acquired no interest in lot 4 under the Wendhausen power of attorney, or from any other source, so far as shown by the evidence.

The cause was tried before the court without a jury and upon the pleadings and evidence the trial court, at the request of appellant, filed his conclusions as follows:

"First. That the land conveyed by Summerfelt to Pye Realty Company and by said company to Wendhausen was the southwest quarter of said section 34, H. T. & B. R. R. survey, being lot No. 3 of said Tolman subdivision of said section 34.

"Second. That the Masterson Irrigation Company acquired no title to the southeast quarter of said section 34, being lot No. 4 of said Tolman subdivision of said section, by its deed from Wendhausen and Meek & Highsmith, and cannot recover herein.

"Third. That the defendants Frank Miller, George J. Miller, and H. V. Young own the property in controversy and are entitled to a judgment against plaintiff therefor."

Judgment in accordance with such conclusions was rendered and entered of record. From this judgment Masterson Irrigation Company has appealed.

The contention of appellant is that the trial court erred in holding that the land conveyed to Pye Realty Company, and by said company to Wendhausen, was the southwest quarter of said section 34, H. T. & B. R. R. survey, same being lot 3 of the Tolman subdivision, and in holding that Masterson Irrigation Company acquired no title to the southeast quarter of said section 34, it being lot No. 4 of said Tolman subdivision, by its deed from Wendhausen and Meek & Highsmith.

This contention cannot be sustained. We think the evidence clearly and amply supports the finding and holding of the court. There is no patent ambiguity in the deed from Summerfelt to Pye Realty Company, nor in the deed from Pye Realty Company to Wendhausen, and by these deeds the land can be located on the ground as the southwest quarter of said section 34, without reference to other evidence. Any competent surveyor could, by the description of the land given in the two deeds, without other information, locate on the ground the land conveyed thereby. The Tolman map when introduced disclosed a latent ambiguity, as it showed that the southwest quarter is not lot No. 4, but is lot No. 3. This map is unrecorded and may be lost, but the designation "the southwest quarter" is certain, and by this description the land conveyed can be located without the aid of the map or any other outside evidence. We think the fact that on the same day Pye Realty Company purchased from Summerfelt lot No. 1, it being the northwest quarter of the section, he purchased another lot described in his deed as the southwest quarter of said section, is a strong circumstance tending to show the latter purchase was in fact the southwest quarter, which joins the first tract purchased so as to constitute a solid body of land containing 320 acres, the entire west half of section 34, while if the second tract was lot No. 4, the southeast quarter, the two tracts purchased would not lie contiguous one to the other and form one body of land. That Summerfelt by his deed to Pye Realty Company intended to convey

lot No. 3 of the Tolman subdivision, the southwest quarter of section 34, there can be no doubt, for in less than one year after he had sold, as he thought, the west half of his section of land to Pye Realty Company he sold the other, the east half thereof, to John A. Owen, and in his deed to Owen described the same as lots 2 and 4 according to the Tolman map and as the northeast and southeast quarters of said section. Nor can there be any doubt that Wendhausen understood that the land conveyed to him by Pye Realty Company by deed of date February 24, 1910, recorded in volume 95, pages 376, 377, Deed Records of Brazoria County, was lot No. 3, the southwest quarter of section 34; for on the 20th day of October, 1911, about 18 months after he purchased from Pye Realty Company, he gave Meek & Highsmith a power of attorney coupled with an interest, in which he made the following recitals:

"This southwest quarter of said section being deeded to me on the 24th day of February, 1910, by F. E. Pye Realty Company of Houston, Texas, said deed of record in the county clerk's office of Brazoria county, in Volume 95, on pages 376, 377, in which said deed F. E. Pye sold me said property for $3,200 cash, and which said deed described the property as follows: 'Lot No. four (4) of the J. C. Tolman subdivision, section 34, H. T. & B. R. R. survey, abstract No. 554. Brazoria county, Texas, containing one hundred and sixty (160) acres of land, and being the southwest quarter of said section.' The description of this land made by F. E. Pye to me and described in said deed should have been lot No. three (3) instead of lot No. four (4), said lot No. three (3) being the lot which he sold me."

And thereafter Wendhausen instituted suit in the United States court for the southern district of Texas, through his attorneys, Meek & Highsmith, against A. E. Masterson for recovery of said lot No. 3, being the southwest quarter of said section.

Appellant certainly cannot in good faith contend that it acquired any title to or interest in lot 4 of the Tolman subdivision by virtue of the purchase of A. E. Masterson at the trustee's sale, before mentioned, as there was no pretense that the deed of trust under which the land he purchased was sold covered lot 4, but, on the contrary, it specifically describes lot 3, the southwest quarter only.

It is both unnecessary and unprofitable to further pursue this discussion, as we think it has already been shown, not only that the judgment of the court is amply supported by the evidence, but that no judgment other than the one rendered could have been sustained under the evidence.

The judgment is therefore in all things affirmed.

Affirmed.